UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gerald Mills, Esq., et al.

                             Case No. 3:13-cv-01101

            Plaintiffs,

     v.                                 MEMORANDUM
                                      OPINION & ORDER

United States of America, et al.

            Defendants.

### I. INTRODUCTION

Before me is the motion of Defendant United States of America for summary judgment pursuant to Rule 56. Plaintiffs Gerald Mills, Esq., and NUH, Inc., and Defendants the Ohio Bureau of Workers Compensation ("OBWC"), Ohio Department of Jobs and Family Services ("ODJFS"), and Ohio Department of Taxation ("ODT") (collectively the "State Defendants") also have filed a joint motion for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1335(a) and venue is appropriate pursuant to 28 U.S.C. § 1397. The parties have completed briefing and, for the reasons stated below, the Plaintiffs' and State Defendants' joint motion for summary judgment, (Doc. No. 30), is denied and the United States' motion for summary judgment is granted. (Doc. No. 29).

1

## II. BACKGROUND

The facts of the case are not much in dispute. Mills and NUH filed this interpleader action asking me to prioritize various state and federal tax liens and past due amounts connected to the sale of a Little Caesar's pizza franchise business, and to relieve buyer NUH of successor liability. (Doc. No. 1). In December 2011, NUH and JJ Littin entered into a purchase and sale agreement. (Doc. No. 1-2). NUH agreed to pay JJ Littin $250,000 in cash, plus the cost of inventory, at closing. (Doc. No. 1-2 at 1). The parties agreed to allocate the purchase price at closing. (Doc. No. 1-2 at 2). The parties also agreed the sales proceeds first would be used to satisfy all existing liens, with the remainder placed in escrow to settle any federal or state tax liens. (Doc. No. 1-2 at 2-3).

The deal closed on February 3, 2012. The closing statement indicates $111,236.14 from the sale proceeds satisfied certain liens filed by the State Defendants and other non-parties, including attorneys' fees. (Doc. No. 1-1). The closing statement also indicates the sum of $41,683.48 was "held in escrow" to pay estimated commercial activity taxes and $97,080.38 "to fund an Offer in Compromise with the Internal Revenue Service and the State of Ohio." (Doc. No. 1-1 at 1).

The parties do not dispute JJ Littin's liability for "large sums due for . . . federal withholding, unemployment, social security, [and] Medicare." (Doc. No. 1-2 at 2). The total amount of JJ Littin's unpaid state and federal taxes during the period 2003-2012 exceeds $700,000. The United States filed three Notices of Federal Tax Lien on July 5, 2012. Excepting two amounts totaling $15,767.25, the United States assessed the unpaid federal liability prior to close and valued at $559,405.99. (Doc. Nos. 29-3, 29-4, 29-5). The State Defendants assert there is a total of $150,821.41 in unpaid state taxes, allocated as follows: Ohio Department of Job and Family Services – $25,322.31 (Doc. No. 15); Ohio Bureau of Workers Compensation – $38,673.45 (Doc. No. 14); Ohio Department of Taxation – $86,825.65 (Doc. No. 16). The State Defendants assert they knew the full extent of their claims on or about November 20, 2012. (Doc. No. 30 at 4).

In December 2012, the IRS issued a Notice of Levy to Mills in an attempt to collect JJ Littin's federal tax liabilities from the amount held in escrow. (Doc. No. 13 at 7). In March 2013, the IRS issued a final demand for payment to Mills. (Id.). Plaintiffs then filed this action, seeking permission to release the sale proceeds to the State Defendants with the remainder to the United States and a release from any and all liability to all Defendants regarding the escrow account. (Doc. No. 1 at 7-8). The United States moved for summary judgment demanding judgment in the amount of $138,763.83 plus any accrued interest. (Doc. No. 29-1 at 9). The State Defendants and Plaintiffs moved for summary judgment demanding judgment in the amount of $94,180.15, allocated among the State Defendants. (Doc. No. 30 at 13).

### III.  STANDARD

A district court shall grant a party's motion for summary judgment if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant may meet its burden by showing there is an absence of evidence to support an element of a claim on which the non-movant has the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has satisfied its burden, the non-movant then must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All evidence must be viewed in the light most favorable to the non-movant, and all reasonable inferences drawn in the non-movant's favor. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. ANALYSIS

### A. PRIORITY OF TAX LIENS AND PAST DUE AMOUNTS

Among competing liens, the rule of "first in time, first in right" governs. *Terwilliger's Catering Plus, Inc. v. Baverly*, 911 F.2d 1168, 1176 (6th Cir. 1990) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954)). A federal tax lien attaches to a delinquent taxpayer's property and rights to property. 26 U.S.C. § 6321. Federal tax liens do not require notice or recordation to be valid. *Knox v. Great W. Life Assurance Co.*, 212 F.2d 784, 784 (6th Cir. 1954). On the contrary, they become choate at the moment the collector receives his assessment list. *Metropolitan Life Ins. Co. v. United States*, 107 F.2d 311, 313 (6th Cir. 1939). That liability remains in force until satisfied or rendered unenforceable due to lapsed time. 26 U.S.C. § 6322.

Section 6323 protects purchasers, and holders of security interests, mechanic's liens and judgment liens from secret United States liens arising under § 6321 by requiring the United States to file notice. 26 U.S.C. §§ 6323(a), (f). It is broadly accepted that § 6323 narrowly applies to specific parties Congress intended to protect by the statute. *See, e.g., City of New Britain*, 347 U.S. at 88 ("There is nothing . . . to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein."); *United States v. Equitable Life Assurance Soc'y*, 384 U.S. 323, 329-30 (1966) (narrowly limiting § 6323 to its specifically enumerated categories, not "ancillary interests"). The statute defines a purchaser as one whom "for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).

The State Defendants assert the United States' claims of priority over their liens are limited by § 6323. (Doc. No. 30 at 8). Because the present dispute involves a purchase, the argument goes, the United States's liens were inchoate until it filed notices of federal tax liens in July and October

4

2012 and thus the State Defendants' liens take priority. This argument is mistaken. The statute protects *purchasers*, not purchases, and the State Defendants are not purchasers. Rather, the State Defendants' claims are ancillary interests and they cannot avail themselves of § 6323's protections.

Thus, at least concerning the State Defendants, I must look to the date the federal tax liens were assessed, not the date the United States filed its Notice of Federal Tax Lien. The State Defendants assert their interest became fixed no earlier than February 3, 2012. Therefore all of JJ Littin's delinquent federal tax assessments on or before this date and estimated in the range of $543,638.74 take priority over the State Defendants' claims. As this amount more than doubles the negotiated purchase price, and dwarfs the funds at issue today, I need not decide the priority to be assigned to the delinquent federal tax assessments dated after February 3, 2012.

**B.    PROPERTY OR PROPERTY INTEREST IN CONTRACTED SALE PROCEEDS**

The United States seeks to satisfy its lien against JJ Littin with proceeds from the sale. Whether JJ Littin's interest in the sale proceeds constitutes "property and rights to property" is a question of federal law dependent on state law. *United States v. Craft*, 535 U.S. 274, 278 (2002). I must look first to Ohio law to determine what rights JJ Littin has to the property the United States seeks to reach, then to federal law to determine whether JJ Littin's state rights qualify as property or rights to property within federal legislation. *Drye v. United States*, 528 U.S. 49, 58 (1999) (citing *Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 80 (1940)).

Ohio law requires a business purchaser to "withhold a sufficient amount of the purchase money" to satisfy outstanding state tax liabilities. Ohio Rev. Code § 5739.14. If the purchaser "fails to withhold purchase money," the purchaser then becomes "personally liable for the payment of the taxes, interest, and penalties accrued and unpaid during the operation of the business by the former owner." Ohio Rev. Code § 5739.14; *State v. Sloan*, 132 N.E.2d 460, 462 (Ohio 1956). The statute does not affect contractual obligations, it merely allocates the parties' tax state obligations. *Campbell*

*v. Marple*, No. 00CA0013, 2000 WL 171552, at *3-4 (Ohio Ct. App., November 13, 2000). Ohio law does not require the use of an escrow agent in sales such as the one at issue in the litigation, though the use of escrow is not uncommon. S*ee, e.g., Ohio Dep't. of Taxation v. B/G 98 Co., LLC*, 753 N.E.2d 214 (Ohio Ct. App. 2001).

After the existing state liens were paid, NUH placed the remainder of the sale proceeds into the escrow account. The terms relating to escrow make clear the parties intended the escrow to satisfy the United States' liens, not to prioritize those of the State Defendants. Furthermore, the agreement contemplated the need to pay the United States from the sale proceeds and instructed the escrow agent to do so.

> Any sums not required for liens shall be held in escrow by Buyer's counsel, Gerald L. Mills. Seller's counsel shall negotiate a settlement of any federal taxes as to which a lien has not been filed. Upon written notice that an offer in compromise has been reached for the amount held in escrow or less, Gerald L. Mills shall disburse the lesser of the amount of the offer in compromise or the entire amount to the Internal Revenue Service.

(Doc. No. 1-2 at 3).

As discussed above, the United States' liens were choate at the time of closing on February 3, 2012. While settlement negotiations regarding the federal taxes apparently were not successful, this does not change the primacy of the federal lien. Further, the parties' agreement specifically contemplated a scenario in which the unpaid federal taxes equaled or exceeded the amount held in escrow.

Finally, the State Defendants argue that the state liens hold priority over the funds in escrow because Ohio law makes NUH "immediately liable for the outstanding amounts owed to [the state] agencies." (Doc. No. 30 at 10). This is incorrect. Section 5739.14 clearly states a purchaser only becomes liable if the purchaser "fails to withhold purchase money." Ohio Rev. Code 5739.14; *Sloan*, 132 N.E.2d at 462 ("If a purchaser fails to comply with this section, either by obtaining a certificate that no taxes are due or by withholding the amount of taxes due, he becomes personally liable for

6

such taxes."). NUH agreed to pay JJ Littin a set amount for the business and performed its legal obligation to hold the purchase money in escrow to facilitate payment of the unpaid taxes. The escrow funds were not NUH's to keep, but instead were designated to pay the unpaid tax liabilities JJ Littin had accrued. The federal liens hold priority under the first-in-time principle and therefore the United States is entitled to the funds held in the escrow account.

## V. CONCLUSION

For the reasons stated above, the State Defendants' motion for summary judgment, (Doc. No. 30), is denied and the United States' motion for summary judgment is granted. (Doc. No. 29). Plaintiff Gerald Mills is ordered to disburse the entire amount of the funds held in escrow to the United States.

So Ordered.

s/Jeffrey J. Helmick<br>United States District Judge